IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON P.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 2:20-cv-00688-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Jason P. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Full consent to magistrate jurisdiction was entered on February 27, 2023 (Dkt. #26). For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff is a 54-year-old man who alleges he is unable to work due to physical impairments. On April 4, 2017, Plaintiff protectively filed an application for disability insurance benefits alleging disability beginning March 27, 2013. Tr. 152. The claim was initially denied on May 1, 2017, and again upon reconsideration on August 23, 2017. Tr. 92–100. A hearing was held on January 23, 2019, before Administrative Law Judge Stephen Marchioro. Tr. 38. At the

---

[1]In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

hearing, through counsel, Plaintiff amended his alleged onset date to March 23, 2018. Tr. 45. On March 4, 2019, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. Tr. 32. On March 20, 2020, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since March 13, 2018, the application date. Tr. 23.

2. Plaintiff has the following severe impairments: detached retina and total blindness in the right eye; migraine headaches; and pseudoseizures. Tr. 23.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24.

4. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can never climb ladders, ropes, and scaffolds; he can occasionally balance; he is limited to a work environment with moderate noise levels as defined in the Selected Characteristics of Occupational Titles (SCO); he can occasionally be exposed to irritants, such as fumes, odors, dusts, and gases; he must avoid all use of unguarded moving machinery parts; he must avoid all exposure to unprotected heights, he must avoid all exposure to flashing or strobe lights; and since he has no vision in the right eye, he is limited to work that can be performed with monocular vision. Tr. 25.

5. Plaintiff is capable of performing past relevant work as a training representative and a microcomputer support specialist. Tr. 29–30.

6. Plaintiff was born on December 26, 1968, and was 50 years old, which is defined as an individual "closely approaching advanced age" on the date last insured. Tr. 31.

7. Plaintiff has at least a high school education and is able to communicate in English. Tr. 30.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. 31.

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner II, dietary aide, and kitchen helper. Tr. 31.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since March 13, 2018, the alleged onset date. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec.*

5 - Opinion and Order

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated the medical opinions and evidence.
3. Whether the ALJ properly developed the RFC
4. Whether the ALJ failed to properly develop the record as to Plaintiff's mental impairments[2]

For the following reasons, the Court finds that the ALJ did not err. The decision of the Commissioner is affirmed.

---

[2] Plaintiff also argues that the job cleaner II is incompatible with plaintiff's RFC. This argument lacks merit because the ALJ cited 199,000 other jobs in the national economy (Tr. 31.), which is a significant number on its own. See *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 527 (9th Cir. 2014) (holding that 25,000 jobs was a significant number.)

6 - Opinion and Order

I.      **The ALJ properly evaluated Plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7–8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of his symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Plaintiff testified that he suffers from progressive severe headaches that resulted in his departure from work in 2013. Tr. 52. He stated that his condition got considerably worse from 2016 to 2018. Tr. 53, 462. Plaintiff told Dr. Ryan McKinnon, M.D. that his headaches prevent

7 - Opinion and Order

him from completing personal care including bathing, shaving, caring for his hair, and feeding himself. Tr. 72, 193–94, 202, 462. Plaintiff stated that his symptoms are further provoked by light, noise, and heat. Tr. 282. Inconsistently, on other occasions Plaintiff testified that he showered in the morning, cooked at home, fed the cat, and mowed the law. Tr.53–54, 58, 72, 194–95, 202. Plaintiff asserts that he spends his days in seclusion, keeping as still and quiet as possible with minimal exposure to light and noise. Tr. 55, 72, 195–96, 253, 282, 444–46, 455–56, 462. On a good day, Plaintiff stated that he is able to drive without restrictions, attend church, and follow instructions. Tr. 47, 58, 72, 197.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 26. Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony, and in particular with respect to his intractable headaches stemming from the right eye. Pl.'s Br. 11, ECF No. 15. The Commissioner asserts the ALJ supplied three valid rationales that undermined Plaintiff's subjective complaints: (A) inconsistencies with his activities of daily living; (B) Plaintiff's symptoms improving with treatment; and (C) inconsistencies with the medical record. Def.'s Br. 5–9, ECF No. 21.

### A. Activities of Daily Living

The Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon his activities of daily living. Def.'s Br. 5–6, ECF No. 21. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities

8 - Opinion and Order

"meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

In this case, Plaintiff's activities of daily living directly contradict his testimony. The ALJ cited hearing testimony where he stated he was able to take care of himself, cook, and mow the lawn as being directly contradictory to his previous statements in the medical record where he said he could not do such activities. Tr. 27. Specifically, the ALJ explains that Plaintiff stated to Dr. McKinnon, that he could not do personal care due to his headaches, and that his pain was provoked by the heat of a cooking stove, noise, and light. Tr. 27, 282.

The ALJ reasonably found that Plaintiff's daily activities stood at odds with his allegations of very severe limitations, resulting in him spending his days in seclusion, keeping as still and quiet as possible with minimal exposure to light and noise. Therefore, Plaintiff's activities of daily living were a clear and convincing reason to reject Plaintiff's testimony.

### B. Improvement With Treatment

The Commissioner next asserts that the ALJ properly rejected Plaintiff's testimony based on Plaintiff's symptoms improving with treatment. Def.'s Br. 6–7, ECF No. 21. The effectiveness of treatment or medication is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

In this case, Plaintiff presented with complaints of chronic head pain stemming from the right eye. In July 2018, Plaintiff visited Dr. Kathleen Bernice Digre, M.D. for a neuro-opthalmology consult to address his chronic pain. Dr. Digre recommended Plaintiff start a trial of Topiramate (Topamax), among other medications, as a migraine preventative. Tr. 466. The ALJ noted that Plaintiff did not return to Dr. Digre for further care. Tr. 27. Shortly after in July 2018, Dr. Rick Roberts, M.D. initiated Topamax preventative therapy. Tr. 376–77. In August 2018, Dr. Roberts indicated that Plaintiff was "pain free" with Topamax treatment. Tr. 373. In September 2018, Dr. Roberts reported that Plaintiff was pleased with his pain control and determined that Plaintiff had responded "beautifully" to the Topamax treatment. Tr. 370.

The ALJ's finding that the record established significant relief from medication within twelve months of the amended alleged disability onset date is supported by substantial evidence, and this was a clear and convincing reason to discount the severity of Plaintiff's symptoms.

### C. Objective Medical Evidence

The Commissioner next asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 7–9, ECF No. 21. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Moreover, an ALJ may not cherry-pick isolated instances of favorable symptoms when the record as a whole reflects long-standing disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Here, the ALJ determined that the medical record contradicted Plaintiff's allegations of persistent debilitating headaches. Tr. 227. The ALJ explained that Dr. McKinnon confirmed Plaintiff was blind in his right eye but indicated a "completely normal" exam of the left eye. Tr. 27. The ALJ also found that brain CT, MRI, and EEG did not show intracranial abnormality. Tr. 27, 287, 304, 343–46, 356, 359, 387. The ALJ found that Plaintiff's testimony regarding his seizures being induced by his hypersensitivity to noise was inconsistent with the severity of his medical condition. Tr. 28. The ALJ explained that there was no objective evidence of frequent, severe seizures, or pseudoseizures. Tr. 28.

The ALJ determined that given Plaintiff's medical examinations did not show greater limitations, the determined RFC adequately accounts for Plaintiff's impairments. Tr. 25. As such, the objective medical evidence was a clear and convincing reason to reject Plaintiff's testimony.

**II.     The ALJ properly evaluated the medical opinions of Dr. Arnold and Dr. Smith.**

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on April 4, 2017. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

In this case, the ALJ accepted the opinion of non-examiner Dr. Leslie Arnold, M.D. and rejected the opinion of examiner Dr. Ryan Smith, M.D. Plaintiff asserts that the Ninth Circuit defers to medical opinions in the following descending order: those medical professionals who treat, followed by those who examine but do not treat, followed by those who neither treat nor examine. Pl.'s Br. 13–14, ECF No. 15., citing *Garrison v. Colvin*, 759 F.3d 995, 2012 (9th Cir. 2014). Plaintiff argues that the ALJ did not provide specific and legitimate reasons for discounting an examining doctor's report, and that an examining doctor's report takes precedence over the report of a non-examiner. Pl.'s Br. 14, ECF No. 15., citing *Garrison*, 759 F.3d at 1012. Plaintiff is mistaken.

Under the regulations governing applications filed on or after March 27, 2017, opinions from treating doctors no longer get any deference, and no special rules apply when evaluating them. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). As such, and semblance of a hierarchy between medical opinions based on the relationship between a claimant and a doctor has been eliminated. *See* 82 Fed. Reg. at 5852-53. Therefore, Plaintiff is incorrect in stating that an

examining doctor's report takes precedence over a non-examiner's report unless the ALJ provides specific and legitimate reasons to discount it. When evaluating which opinions are most persuasive, under the new regulations, the two most important factors are supportability & consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

### A. Dr. Smith

Dr. Smith completed a headache health status questionnaire in October 2018. Tr. 445–46. He found that the headaches create profound light sensitivity, sound sensitivity, and difficulty thinking. Tr. 446. Dr. Smith opined that these symptoms would constantly interfere with Plaintiff's ability to pay attention and concentrate when performing simple work tasks. Tr. 446. He further opined that Plaintiff would require ten-minute breaks several times an hour. Tr. 446.

The ALJ found Dr. Smith's opinion not persuasive. The ALJ rejected Dr. Smith's opinion on the basis that he only examined Plaintiff once, and that the responses in the questionnaire are primarily based on the Plaintiff's subjective complaints, rather than objective medical findings. Tr. 29. The ALJ further explained that that there is no indication that Dr. Smith was given Plaintiff's medical records from other treating sources before rendering his opinion, given that his responses are not supported by objective medical findings. Tr. 29. These objective medical findings include Plaintiff's positive response to treatment, activities of daily living, and apparent inconsistencies in reporting his symptoms. Tr. 29. Therefore, the ALJ's evaluation of Dr. Smith's opinion was reasonably supported by substantial evidence and included no harmful error.

### B. Dr. Arnold

Under the new regulations, a non-examining opinion is evidence the ALJ "must consider" because consultants are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). State agency consultant Dr. Arnold reviewed the

13 - Opinion and Order

record in this case, noting Plaintiff's postural and environmental limitations, but no exertional limitations. Tr. 29. Dr. Arnold found the visual field testing conducted by Dr. McKinnon was inconsistent with Plaintiff's eye examination, and therefore was not valid. Tr. 84. The ALJ found Dr. Arnold's non examining opinion highly persuasive and determined that the opinion supported Plaintiff's RFC. Tr. 29.

Plaintiff challenges the ALJ's evaluation of Dr. Arnold's opinion by asserting that the ALJ's only reason for accepting the opinion was that the RFC the ALJ created was supported by Dr. Arnold's opinion. Pl.'s Br. 14, ECF No. 15. This is factually incorrect, as discussed above the ALJ's evaluation of this opinion sufficiently considered supportability and consistency, and the Court finds that it was reasonably supported by substantial evidence.

### III. Plaintiff's RFC Determination Was Supported by Substantial Evidence

An individual's residual functional capacity is the most he can do considering his impairments and limitations. 20 C.F.R. § 416.945; SSR 96-8p, *available at* 1996 WL 374184. The ALJ is "responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The residual functional capacity properly includes only limitations with record support. *Bayliss*, 427 F.3d at 1217; *Batson*, 359 F.3d at 1197. Here, Plaintiff argues that the RFC determination is not supported by substantial evidence. Pl.'s Br. 16, ECF No. 15. The Court disagrees.

Plaintiff argues that the RFC determination does not include the functional limitations opined by Dr. Smith. Pl.'s Br. 16, ECF No. 15. As discussed above, the ALJ properly discounted Dr. Smith's medical opinion, and therefore, was not required to include those discounted

limitations in the RFC determination. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record.

## IV. The ALJ did not fail to develop the record

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen,* 80 F.3d at 1288 (*quoting Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring all the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F .3d 599, 602 (9th Cir.1998); *Smolen,* 80 F.3d at 1288.

Plaintiff argues the ALJ should have further developed the record regarding Plaintiff's limitations from pseudoseizures. Pl.'s Br. 16–17, ECF No. 15. The ALJ's duty to further develop the record is not triggered by the absence of opined functional limitations in the workplace, but instead is triggered when the record is ambiguous or inadequate. *See Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence" or "the ALJ's own finding that the record is inadequate."). Here, the ALJ found that Plaintiff's pseudoseizures were a severe impairment at step two. Tr. 23. The ALJ considered that Dr. Roberts and his staff reported and witnessed Plaintiff's pseudoseizures and

15 - Opinion and Order

determined that the medical evidence does not establish that Plaintiff experienced ongoing frequent, severe pseudoseizures for a period of twelve continuous months. Tr. 28. The ALJ explained that the pseudoseizures were very short-lived without any neurologic deficit, and completely without any postictal state. Tr. 28. Nevertheless, the ALJ agreed that Plaintiff's pseudoseizures are a serious impairment affecting his ability to work and translated those impairments into concrete workplace restrictions through his RFC. Tr. 28. The ALJ was not required to order further examinations regarding Plaintiff's pseudoseizures, and the ALJ did not err in declining to do so. *See Webb*, 433 F.3d at 683. Accordingly, the record was unambiguous and sufficient to determine Plaintiff's ability to work.

## ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this 11 day of May, 2023.

MARK D. CLARKE
United States Magistrate Judge